222 F.2d 871
 HOLMES EUREKA LUMBER COMPANY, a corporation, Appellant,
v.
MITCHELL-DORR REALTY COMPANY, a corporation, in dissolution
and winding up, William W. Crapo, Donald F. Hyde, Stuart G.
Morley, Thomas M. Morley, Emil A. Tessin, Lizzie Stapleton
and Clement P. Quinn, and the survivors or survivor of them,
as Liquidating Trustees of Mitchell-Dorr Realty Company, a
corporation, Appellees.
 No. 14150.
 United States Court of Appeals Ninth Circuit.
 May 31, 1955.
Rehearing Denied July 27, 1955.
 
 L. W. Wrixon, Carl R. Schulz, San Francisco, Cal., George A. Corbett, Eureka, Cal., for appellant.
 Herbert W. Clark, Alfred L. Gibson, Richard J. Archer, Morrison, Hoffeld, Foerster, Shuman & Clark, San Francisco, Cal., Robert H. Cook, Cook & Cook, Saginaw, Mich., for appellee.
 Before HEALY, BONE and ORR, Circuit Judges.
 ORR, Circuit Judge.
 
 
 1
 In the year 1941 appellees were owners of merchantable redwood timber situate on land in Humboldt County, California. Appellant was engaged in a sawmill operation. Appellees entered into a written contract with appellant to sell standing timber to it. The instant case stems from a dispute as to the meaning of a clause of that contract which provides for an extra payment for the timber, known as additional stumpage, in the event appellant should realize large profits in a given year from operations in which timber cut from appellees' land was utilized. Appellees' claim, successfully asserted in the trial court, is that a tax refund on account of an earlier year's operations (1944) resulting from a loss in a subsequent year (1946) should be applied in reduction of taxes in the earlier year, thereby increasing profits for the earlier year and the amount of additional stumpage payable. In making this claim appellees urge that this case is concerned solely with an interpretation of the contract and that a proper construction thereof sustains their claim. We agree that this is a contract case but do not agree with the construction appellees place thereon.
 
 
 2
 The terms of the contract, insofar as relevant here, provide for the payment of basic stumpage for timber cut at the rate of three dollars per thousand feet for redwood and one dollar per thousand feet for fir, and for the payment of additional stumpage to be computed as follows:
 
 
 3
 'An amount equal to that proportion of twenty-five (25%) per cent of the excess net earnings of the purchaser for each calendar year during the life of this agreement commencing with the year 1942, that the amount of timber removed from the above described lands of the owner and sawn by the mill bears to the total amount of all timber from all lands of all persons sawn by said mill in said calendar year.
 
 
 4
 'The term 'excess net earnings' as used herein shall be deemed to mean all earnings of the purchaser from all lumber operations other than the sale of capital assets, during the year 1942, and each year thereafter during the life of this agreement, as shown by annual audit of the purchaser by certified public accountants, after all charges, operating expenses, depreciation, depletion, interest, taxes, and public charges of every kind and nature whatsoever, and such other items as are properly deductible in determining net income available for dividends, and after deducting in addition an amount equal to eight (8%) per cent of the capital and earned surplus of the purchaser as of the first of January of each said calendar year.'
 
 
 5
 Appellant's certified public accountants, Lester, Herrick and Herrick, computed the additional stumpage payable for 1944 at $2,413.22, which sum was paid to Mitchell-Dorr. In making the computation of additional stumpage for 1944 the accountants deducted from excess net earnings, among other items, the sum of $243,645.44 representing corporation income and excess profits taxes due the government. In 1946 Holmes-Eureka sustained a net operating loss of.$216,746.12. As a result of this net operating loss appellant carried back to the year 1944 net operating loss deductions and unused excess profits tax credits which resulted in a refund of $184,968.32 of income and excess profits taxes on account of the year 1944. The accountants treated this refund as a special income item in 1946 and made no adjustment to 1944 taxes. Since they made no adjustment to 1944 taxes, the accountants found no occasion to recompute excess net earnings and additional stumpage for 1944 as a result of the refund. Excess net earnings as shown by the audit for 1944 remained the same.
 
 
 6
 Appellees argue that the contract requires that the tax refund on account of the year 1944, which resulted from the loss in 1946, be applied as an adjustment to the 1944 audit computing excess net earnings and additional stumpage. The basis of this argument is that the word 'taxes' must be given the meaning fixed by federal law and that by the terms of that law the refund is a reduction of the taxes payable on account of 1944. The effect of the adjustment urged by appellees would be to decrease the taxes deductible in computing excess net earnings, and thereby increase excess net earnings and additional stumpage. The trial court, adopting this construction of the contract, made a determination that additional stumpage for the year 1944 was due appellees in the amount of $44,392.39. There appear to be discrepancies in the figures and the method by which the trial court computed this sum. We need not concern ourselves with this phase of the case because of our conclusion that the word 'taxes' as used in the contract must be given the meaning that sound accounting practices require. Our construction of the contract does not permit an adjustment of excess net earnings in 1944 resulting from a tax refund occasioned by a loss in 1946.
 
 
 7
 The clause in the contract providing for the computation of excess earnings and additional stumpage is referred to by the parties as the 'inflation' clause. Although the manner in which the clause attains its end may seem somewhat involved, its purpose is clear and apparent. That purpose is to provide the owners with larger returns in the event a rise in the price of lumber, or other factors, should eventuate in an unusually large profit on operations in which the owners' timber is used. To achieve this result the contract provides that twenty-five per cent of unusual profits, attributable in any given year, to operations using owners' logs is to be paid to the owners as additional stumpage. The formula for computing excess net earnings is a method for computing an unusual profit in any given year; additional stumpage is a payment in the nature of a bonus or profit-sharing arrangement based upon the excess net earnings.
 
 
 8
 The language of the contract controlling the disposition of this case is: '* * * earnings * * * as shown by annual audit of the purchaser by certified public accountants, after all charges * * * taxes * * * and such other items as are properly deductible in determining net income available for dividends * * *'. This language emphasizes a recognition by the parties that a proper resolution of the matters involved in the administration of this clause was peculiarly within the competency of accountants. The implication of this language is that the meaning of the terms used in the clause should be governed by generally accepted accounting practice and that decisions of the accountants as to appropriate charges against earnings should control if in accord with sound accounting practice.
 
 
 9
 We are particularly concerned with the meaning to be given the word 'taxes'. Appellees' position is that 'taxes' must be given its statutory meaning, that sum which is finally determined to be legally due on account of the year 1944. Under this view any decision of the certified public accountants as to the amount of taxes attributable to income in 1944, and any evidence as to the proper accounting treatment of the refund occasioned by the 1946 loss would be without relevance. In our view appellees' interpretation of the word 'taxes' is contrary to the intention of the parties and would produce an inequitable result not in keeping with the purpose of the inflation clause.
 
 
 10
 The inflation clause provides for various charges against income in determining excess net earnings, the decisions as to the propriety and amount of which are matters of accounting practice which must be made in the first instance by the accountants in preparing the audit. In providing that excess net earnings should be 'as shown by annual audit of the purchaser by certified public accountants, after all charges * * *' the parties must have intended that decisions as to appropriate charges against lumbering income for a given year should be governed by accounting practice and that the decisions of the purchaser's certified public accountants would control if in accord with sound accounting practice. A great many of the charges, for example, depreciation, would of necessity be computed figures not representing amounts actually paid or legally payable. The accountants would be required to determine what part of other items should be allocated to lumbering operations. No reason appears why the charge for 'taxes' should be taken out of this context and construed to mean a figure fixed by the taxing statute and unaffected by accounting considerations.
 
 
 11
 We construe the word 'taxes' read in context to mean that charge which, in accordance with generally accepted accounting principles, should be made against income in the year 1944 to provide for the payment of taxes for that year.
 
 
 12
 A reading of the record discloses that the certified public accountants in not adjusting the 1944 tax, followed a established and generally accepted accounting principles.
 
 
 13
 Accounting Research Bulletin No. 23, issued by the American Institute of Accountants and admitted in evidence, provides as follows:
 
 
 14
 '(6) Amounts of income taxes paid in prior years which are refundable to the taxpayer as a result of the 'carry-back' of losses or unused excess-profits credits, should be included in the income statement of the year in which the loss occurs or the unused excess-profits credit arises, provided that, if the amount is material, the net income resulting from the operations of the year should be shown without the inclusion thereof, and the amount should thereafter follow in the income statement as a separate item.'
 
 
 15
 That such is the practice is also evidenced by expert testimony and by letters of appellees' accountants as well as appellant's. If the refund is properly treated as an income item in 1946, it cannot be available as an expense adjustment in 1944 since adjusting both years would result in a double reporting of income. Although there is some indication in the record that some accountants would directly adjust the surplus account in 1946 rather than treat the refund as an income item in 1946, there is not the slightest suggestion that any accountant would adjust taxes for 1944, reducing them by the amount of the refund. Such an adjustment would result in a misleadingly large statement of profits in 1944, since if the business had continued to operate profitably the unadjusted amount of taxes would have to have been paid for 1944. The refund, although as a matter of law payable on account of 1944, is in fact occasioned by the loss in 1946 and it is to the income of that year, if any, that it should be attributed.
 
 
 16
 The fact that treating the refund as an adjustment to 1944 taxes would result in a misstatement of profits for 1944 is borne out by the anomalous and inequitable effect such treatment has on the operation of the 'inflation' clause. The inflation clause was designed to measure unusual profits on the part of the purchaser, so that the owners might share in such profits. If 1944 taxes must be adjusted as a result of a loss in 1946, the inflation clause operates so that the purchaser, after having had a good year and paid additional stumpage, must pay more additional stumpage when he loses money in a subsequent year. Hence, the greater his loss in the subsequent year, the greater the amount of additional stumpage he will be called upon to pay on account of the earlier year. Such a result overturns and frustrates the entire purpose of the inflation clause, and cannot have been intended by the parties.
 
 
 17
 Appellees cite and rely upon Fischer & Porter Co. v. Porter, 1950, 364 Pa. 495, 72 A.2d 98, and Starobin v. Miskowitz, 1952, 280 App.Div. 629, 116 N.Y.S.2d 475, appeal dismissed 1953, 305 N.Y. 567, 111 N.E.2d 441. We think these cases are distinguishable. In construing the terms used in the contracts in each case the courts held that the meaning thereof should be governed by the usage and description of the federal tax law. In the instant case we need no assistance from the usage and description of the federal tax law to determine the intent of the parties. The parties have delegated to certified public accountants, the determination of the moneys due from one to the other, with the implied requirement that they employ generally accepted accounting practices. As we have said, the accountants employing accepted accounting practices have found that the appellees are not entitled to any benefit from the 1946 carry-back.
 
 
 18
 Appellees rely upon correspondence of the parties modifying and construing the contract. This correspondence indicates that the computation of additional stumpage could be reopened and adjusted to account for adjustments in taxes properly attributable to a given year. Such correspondence has no effect upon the problem of this case, however, since upon reopening to adjustment to 1944 taxes would be called for as a result of the 1946 loss and the carry-back to 1944. Appellees also rely upon findings of fact made by the trial court dealing with contract terms. The construction of the contract, including the modifications, is a question of law which we determine for ourselves, and in doing so we reach a conclusion which requires a reversal.
 
 
 19
 Judgment reversed.